1

2    **WO**

3

4

5

6

7                    IN THE UNITED STATES DISTRICT COURT

8                      FOR THE DISTRICT OF ARIZONA

9

10   IN THE MATTER OF                )    No. CV 04-1724-PHX-RGS
                                      )
11   Andrew D. Glogower,             )    BK-00-06179-PHX-RTB
                                      )
12           Debtor                  )    ADV. No. 00-681
     _____ )
13                                    )    **ORDER**
     Andrew D. Glogower,             )
14                                    )
             Appellant/Cross-Appellee )
15                                    )
     vs.                             )
16                                    )
     Janie A. Miller,                )
17                                    )
     Appellee/Cross-Appellant.       )
18   _____ )

19

20           Pending before the Court is Debtor Andrew D. Glogower's ("Debtor's") appeal and

21   Liquidator Janie A. Miller's ("Liquidator's") cross-appeal from a final judgment of the United

22   States Bankruptcy Court entered on July 9, 2004.  Following oral argument on December 5,

23   2005, the Court took the matter under advisement.  Having considered the written and oral

24   arguments of the parties, the applicable law, and the record before it, the Court now rules.

25   I.      BACKGROUND

26           The parties stipulated to the following material facts, as set forth in the Joint Pretrial

27   Statement.  [Bankruptcy Docket ("Doc.") # 64]

28

National Business Association Trust ("NBAT") was an express trust created for the sole purpose of providing health care benefits under certain identified health plans. National Benefit Administrators, Inc. ("NBA") was the administrator of NBAT. The Debtor served as secretary and treasurer of NBA from 1982 through 1987 and was appointed chairman of the board and chief executive officer on September 1, 1988.

In September 1988, while acting as director of NBA, the Debtor approved a resolution authorizing execution of a $485,297.30 promissory note from NBA to himself for accrued but unpaid salary. NBA made payments (the "Loan Payments") to the Debtor in partial satisfaction of the promissory note on November 6, 1989, November 8, 1989, December 5, 1989, and April 26, 1990, in the total amount of $395,000.00. In June 1989, while acting as director of NBA, the Debtor approved a resolution authorizing a bonus payment (the "Bonus Payment") of $362,282.70 from NBA to himself.

On June 20, 1991, the Franklin Circuit Court, Commonwealth of Kentucky (the "Kentucky Court"), found that NBAT was an unauthorized insurer doing business in Kentucky, that NBAT was insolvent, and that further transaction of business would be hazardous financially and otherwise to its policyholders, claimants, and other creditors. Accordingly, on that date, the Kentucky Court ordered the liquidation of NBAT.

On May 9, 1995, the Kentucky Court found that NBA had complete and exclusive authority to market NBAT coverage, to set and collect premiums for NBAT coverage, to receive, adjust, and settle claims under NBAT coverage, to execute documents in the name of NBAT, to receive service of legal process on behalf of NBAT as designated agent, and to otherwise transact the business of NBAT. Accordingly, the Kentucky Court found that NBAT "acted through and as one with NBA" and thus were a single entity. On that date, the Kentucky Court found that NBA was insolvent.

On August 31, 1999, the Kentucky Court entered judgment in the amount of $395,000.00 against the Debtor and in favor of the Liquidator. On October 6, 1999, that

1    court amended the judgment to include prejudgment interest, for a total amount of

2    $833,488.00.

3        The following facts are found in the record.  The Debtor filed a Petition for Relief

4    under Chapter 7 of the United States Bankruptcy Code.  On October 6, 2000, the then-

5    Liquidator of NBAT and NBA filed an adversary complaint pursuant to 11 U.S.C. § 523,

6    seeking to deny the Debtor a discharge of certain debts, including the Kentucky judgment

7    described above.  The adversary complaint alleged that the Debtor is not entitled to a

8    discharge pursuant to 11 U.S.C. § 523(a)(2)(A) (false representations or fraud) (Count 1);

9    11 U.S.C. § 523(a)(4) (defalcation) (Count 2); and 11 U.S.C. § 523(a)(6) (intentional or

10   malicious conduct) (Count 3).  [Doc. # 1]

11       On November 16, 2000, the Debtor filed a Motion for Partial Summary Judgment,

12   alleging that the Kentucky Judgment was dischargeable on the grounds that there were no

13   findings of false representation, fraud, or delfalcation while acting in a fiduciary capacity.

14   [Doc. # 5, 6]  The Liquidator filed a response and cross-motion for summary judgment,

15   arguing that the Kentucky judgment was binding and that the debt is nondischargeable under

16   the three enumerated sections of 11 U.S.C. § 523.  [Doc. # 11, 12]  Following oral argument

17   on the matter, the Bankruptcy Court denied the Debtor's motion and granted the Liquidator's

18   motion.  [Doc. # 24]  In its order, the Bankruptcy Court concluded that *In re Penick*, 199

19   B.R.  16 (Bankr. E.D. Ky), *rev'd,* 149 F.3d 1184 (6th Cir. 1998) (unpublished), *cert. denied,*

20   119 S. Ct. 618, 142 L. Ed. 2d 558 (1999), is the controlling law in this case.  The Bankruptcy

21   Court, however, mistakenly interpreted that decision as a reversal of the lower court's

22   decision to dismiss the creditor's claims.

23       The Debtor filed a Motion for Reconsideration and a separate memorandum regarding

24   *In re Penick*, pointing out that, contrary to the Bankruptcy Court's interpretation, the *Penick*

25   case resulted in reinstatement of the bankruptcy court's dismissal of the creditor's complaint

26   against the *Penick* debtor.  The Debtor argued that there was no evidence in the record of

27   fraud or defalcation by the Debtor in the instant case.  The Bankruptcy Court granted the

28

1  Motion for Reconsideration and vacated its prior order granting the Liquidator's Motion for

2  Summary Judgment. [Doc. # 38]  The Court stated that it was not clear at the initial ruling

3  that the district court in *Penick* had reversed the bankruptcy court, and that, thereafter, the

4  Sixth Circuit had reversed the district court and reinstated the bankruptcy court's decision.

5  The Bankruptcy Court again concluded that it "should follow that decision," but now

6  determined that under *Penick*, transfers of corporate assets to its principals do not trigger the

7  nondischargeability provisions of 11 U.S.C. § 523(a).  The Liquidator filed a Motion to

8  Reconsider, agreeing that *In re Penick* is the controlling law, but arguing that the application

9  of *Penick* supported a judgment in the Liquidator's favor. [Doc. # 47]  After hearing oral

10  arguments on the matter, the Bankruptcy Court denied the Liquidator's Motion for

11  Reconsideration, stating that neither party was entitled to summary judgment.  [Doc. # 66]

12         On February 12, 2002, the parties filed their Joint Pretrial Statement. [Doc. # 64]  On

13  February 26, 2002, the Liquidator filed a Motion for Partial Summary Judgment, alleging that

14  because it was established by the Kentucky Court that the Debtor was pursuing and directing

15  the activities of an unauthorized insurer, Kentucky law mandated that the Debtor should be

16  held liable for all unpaid claims or losses incurred.  The Liquidator further argued that this

17  debt was nondischargeable pursuant to 11 U.S.C. § 523.  The Bankruptcy Court denied the

18  motion. [Doc. # 86]

19         On July 15, 2002, the Liquidator filed a Statement of Damages.  These damages

20  included (1) the Kentucky Judgment in the amount of $833,488.00; (2) the Bonus Payment

21  in the amount of $362,282.70; (3) transfers from NBA to Debtor and other individuals in the

22  corporation, and to other creditors in the amount of $361,221.76, and (4) 4,010 unpaid

23  claims, which totaled approximately $10,259,656.42.

24         On January 23, 2003, the Liquidator filed a Renewed Motion for Partial Summary

25  Judgment, agreeing that *Penick* is controlling and arguing that the debt owed by the Debtor

26  was nondischargeable.  [Doc. # 99]  The Bankruptcy Court denied the motion.

27

28

1        The Liquidator filed a Motion in Limine to preclude the Debtor from introducing

2   evidence that NBAT and NBA were separate legal entities under the doctrine of collateral

3   estoppel because the Kentucky Court had held that they were a single entity.  [Doc. # 104]

4        On March 3, 2003, a three-day trial commenced before the Honorable Redfield T.

5   Baum.  On the first day of trial, the Court granted the Liquidator's Motion in Limine.  At the

6   conclusion of the evidence, the parties submitted post-trial briefs, and the Court heard closing

7   arguments.  Thereafter, the Court took the matter under advisement.

8        On September 17, 2003, the Bankruptcy Court issued its decision, finding that the

9   June 1989 Bonus Payment of $362,282.70 and the Loan Payments paid between November

10   1989 and April 1990 totaling $395,000.00 were not dischargeable under Section 523(a)(4).

11   [Doc. # 129]  The Court described that portion of the claim for defalcation in a fiduciary

12   capacity as "easily decided."  Citing *In re Hemmeter*, 242 F.3d 1186 (9th Cir. 2001), the

13   Bankruptcy Court stated that defalcation includes both the misappropriation of trust funds

14   or money held in any fiduciary capacity and the failure to properly account for such funds.

15   Regardless of intent, the Court continued, defalcation under § 523(a)(4) "is a failure to

16   produce funds entrusted to a fiduciary."  The Court concluded that the Bonus Payment and

17   the Loan Payments to the Debtor "constituted defalcations while he was acting in a fiduciary

18   capacity rendering such obligations not dischargeable in his bankruptcy case."

19        The Bankruptcy Court also concluded that the Debtor's "apparent liability for all of

20   the unpaid claims of NBAT . . . is dischargeable in bankruptcy."  Citing *In re Penick*, the

21   Court stated that "[t]he essence of defalcation for bankruptcy discharge purposes is the

22   failure to produce funds entrusted to a fiduciary.  This concept does not embrace the normal

23   acts within the business judgment of the fiduciary that, however flawed, do not involve the

24   failure to account for or produce a beneficiary's funds."  The Court found that NBAT and

25   NBA could account for or produce the funds entrusted to it.  The Court agreed with the

26   conclusion of the U.S. Department of Labor that this was not a case where a subject actively

27   misled the trustees.  The Court stated that the NBAT employee benefit program "was simply

28

1   underfunded by the employers from the outset and that is, at a minimum, one of the reasons
2   for its ultimate and all but certain financial collapse."

3          The parties filed motions for reconsideration.  In the Bankruptcy Court's March 24,
4   2004 order denying the Liquidator's Motion for Reconsideration, the Court stated that it
5   agreed that the Debtor violated his fiduciary duty of disclosure when he failed to inform the
6   beneficiaries and their employers of the severe financial distress of NBAT.  However, the
7   Bankruptcy Court concluded that it could "not determine from this record the amount of any
8   additional damages that should be declared not discharged . . . ." [Doc. # 149]

9          The Liquidator filed a Motion for Clarification seeking a finding that the Debtor
10  breached his fiduciary duty to disclose in excess of the ruling already made by the Court in
11  its March 24, 2004 decision or for an evidentiary hearing to determine any addition damages
12  beyond the amounts already set by the Court.  The Bankruptcy Court declined to make any
13  further findings.  The Court considered the motion for clarification to be a motion for new
14  trial and denied it as being both procedurally and substantively deficient.  [Doc.# 153]

15         On July 9, 2004, the Bankruptcy Court entered its Final Order and Judgment holding
16  that (1) the $362,282.70 Bonus Payment and the Loan Payments of $395,000.00, as well as
17  the applicable pre- and post-judgment thereon, were not dischargeable under 11 U.S.C. §
18  523(a)(4) because the Debtor committed defalcation in a fiduciary capacity; and (2) the
19  Debtor's apparent liability for all of the unpaid claims of NBAT was dischargeable in
20  bankruptcy.  [Doc. # 158]

21         The Debtor filed a timely appeal and the Liquidator filed a timely cross-appeal from
22  the Bankruptcy Court's judgment.

23     II.    ISSUES PRESENTED

24     A.    Issues on Appeal

25            1.    Whether Bankruptcy Court applied the correct standard in determining
26                  that the Debtor's liability for the Bonus Payment and the Loan Payments
                    was nondischargeable under 11 U.S.C. § 523(a)(4);

27            2.    Whether there are sufficient facts in the record to support the
28                  Bankruptcy Court's finding that the Bonus Payment and the Loan

1   Payments to the Debtor constituted defalcation while acting in a fiduciary capacity; and

2
3       3.    Whether the issue regarding the nondischargeability of the Bonus Payment was properly before the Bankruptcy Court.

4   B.    Issue on Cross-Appeal

5   Whether the Bankruptcy Court erred in finding that the Debtor's apparent liability for all of the unpaid claims of NBAT was
6   dischargeable in bankruptcy.

7   III.    STANDARD OF REVIEW

8   On appeal from a final judgment, the Court will review the Bankruptcy Court's factual

9   findings for clear error and its legal conclusions *de novo*.  *In re Barakat*, 99 F.3d 1520 (9th Cir.

10  1996).

11  IV.    DISCUSSION

12      A.    <u>The Appeal</u>

13  The Debtor argues that the Bankruptcy Court failed to apply the correct standard as set

14  forth in *In re Penick* and by the Ninth Circuit in determining that the Debtor's liability for the

15  Bonus Payment and the Loan Payments was nondischargeable under 11 U.S.C. § 523(a)(4).

16  The Debtor asserts that although the Bankruptcy Court acknowledged that the *Penick* case was

17  controlling authority, it ultimately applied an incorrect, and unduly broad, legal standard, i.e.,

18  that defalcation under § 523(a)(4) is simply "a failure to produce funds entrusted to a

19  fiduciary."

20  Section 523(a)(4) excepts from discharge a debt "for fraud or defalcation while acting

21  in a fiduciary capacity."  The Ninth Circuit has held that "[t]he broad, general definition of

22  fiduciary–a relationship involving confidence, trust and good faith–is inapplicable in the

23  dischargeability context."  *Ragsdale v. Haller*, 780 F.2d 794, 796 (9th Cir. 1986).  Accordingly,

24  in *In re Cantrell*, 329 F.3d 1119, 1125 (9th Cir. 2003), the Ninth Circuit stated that it has

25  "adopted a narrow definition of 'fiduciary' for purposes of § 523(a)(4)."  The *Cantrell* court

26  explained that "'[T]he fiduciary relationship must be one arising from an express or technical

27
28

1    trust that was imposed before and without reference to the wrongdoing that caused the debt.'"

2    *Id.* (quoting *In re Lewis*, 997 F.3d 1182, 1185 (9th Cir. 1996)).

3            The rule adopted by the Sixth Circuit Court of Appeals, which encompasses the state

4    of Kentucky, is the same as that in the Ninth Circuit.  The Sixth Circuit has held that the term

5    "fiduciary" under § 523(a)(4) "applies only to express or technical trusts and does not extend

6    to implied trusts, which are imposed on transactions by operation of law as a matter of equity."

7    *In re Brady*, 101 F.3d 1165, 1173 (6th Cir. 1996); *Penick*, 199 B.R. at 20.

8            In *Penick*, the debtor, who was the sole officer, director and shareholder of W. Penick

9    Electrical Construction Co., Inc., filed a Chapter 7 bankruptcy petition in the United States

10   Bankruptcy Court, Eastern District of Kentucky on March 20, 1995.  *Id*. at 18.  From 1990

11   through 1994, the debtor withdrew money via "corporate" checks from the general checking

12   account of Penick Electrical in irregular amounts for use apart from the electrical construction

13   business.  *Id*.  The withdrawals were entered as loans or "shareholder receivables" on the

14   records of Penick Electrical.  *Id*.  Peoples Bank made a series of loans to debtor's business.

15   Proceeds from these loans were deposited directly into a general checking account in the name

16   of Penick Electrical.  *Id*. at 18-19.  In early 1995, Penick Electrical ceased its operations.  The

17   business was unable to satisfy its financial obligations to Peoples Bank as those obligations

18   became due.  *Id*. at 19.  Peoples Bank filed an adversary complaint and a motion for summary

19   judgment, contending that, as a matter of law, the debt was nondischargeable pursuant to 11

20   U.S.C. § 523(a)(4) because the debtor engaged in defalcation while acting in a fiduciary

21   capacity.  *Id*.

22           The *Penick* court stated that the threshold question to be determined was whether the

23   debtor met the definition of a fiduciary.  That court relied on *In re Johnson*, 691 F.2d 249 (6th

24   Cir. 1982), which it characterized as the leading case in the Sixth Circuit on the subject.  The

25   *Johnson* court, in interpreting § 17(a)(4) of the Bankruptcy Act, which was the predecessor of

26   11 U.S.C. § 523(a)(4), held that "[t]he term 'fiduciary' applies only to express or technical trusts

27   and does not extend to implied trusts, which are imposed on transactions by operation of law

28

1    as a matter of equity. . . . Moreover, the requisite trust relationship must exist prior to the act

2    creating the debt, and without reference to it." *Johnson*, 691 F.2d at 251-52.  The *Penick* court

3    stated that it "must therefore discover the existence of a technical trust in order for the debtor

4    to be considered a fiduciary."  199 B.R. at 20.

5         "Technical trusts are created by an agreement between the parties to impose a trust

6    relationship, or by a statute that specifically imposes fiduciary obligations on a party." *Id*.  The

7    plaintiff in *Penick* relied on Kentucky Revised Statute 271B.6-400(3) to establish the trust

8    relationship between the debtor and his creditors that would make the debtor a fiduciary.  *Id*.

9    That statute provides that no distribution shall be made if, after giving it effect, the corporation

10   would not be able to pay its debts as they become due in the usual course of business, or if the

11   corporation's total assets would be less than the sum of its total liabilities plus the amount that

12   would be needed to satisfy the preferential rights upon dissolution of shareholders whose

13   preferential rights are superior to those receiving the distribution.  *Id*.  The *Penick* court

14   determined that this statute did not create a trust, even though it might infer that a corporate

15   director has a "fiduciary" duty to the corporation's shareholders.  *Id*.

16        The *Penick* court concluded that the plaintiff failed to meet its burden of proof under

17   § 523(a)(4), which "requires the presence of an express trust in order for a debt to be held

18   [non]dischargeable on the grounds that the debtor engaged in a defalcation while acting in a

19   fiduciary capacity." *Id*. at 20-21 (quoting *In re Sigler*, 196 B.R. 762, 768 (Bkrtcy. W.D. Ky.

20   1996)).  Accordingly, the bankruptcy court found that the debt was not excepted from

21   discharge. *Id*. at 21.

22        On appeal, the district court reversed *Penick*.  However, in an unpublished decision, the

23   Sixth Circuit Court of Appeals reversed the district court and reinstated the *Penick* bankruptcy

24   court decision.  *See In re Penick*, 149 F.3d 1184 (6th Cir. 1998).  Thereafter, certiorari was

25   denied.  *Peoples Bank & Trust Co. of Hazard v. Penick*, 525 U.S. 1055, 119 S. Ct. 618, 142

26   L. Ed. 2d 58 (1998).

27

28

1    Although the Bankruptcy Court in the present case acknowledged the *Penick* case as

2  controlling authority, the court failed to cite it or apply the standards set forth therein when it

3  rendered its September 17, 2003 decision regarding the Bonus and Loan Payments.  Instead,

4  the Bankruptcy Court stated that "defalcation in the context of Section 523(a)(4) is a failure

5  to produce funds entrusted to a fiduciary."  The Bankruptcy Court found defalcation based

6  upon the Debtor's conduct in paying himself at a time when NBAT did not have the financial

7  resources to pay claims due to the plan beneficiaries.  [Doc. # 129]  The Bankruptcy Court,

8  however, made no finding of an express trust, as required by controlling Sixth and Ninth

9  Circuit law.  The Bankruptcy Court instead relied on a general definition of a breach of

10  fiduciary duty, a standard that "is inapplicable in the dischargeability context." *Ragsdale*, 780

11  F.2d at 796.

12    The Debtor also argues that there are insufficient facts in the record to support the

13  Bankruptcy Court's finding that the Bonus Payment and the Loan Payments constituted

14  defalcations while acting in a fiduciary capacity.  The Debtor points out that NBAT was

15  created by Trust Agreement dated July 24, 1987.  [Liquidator's Trial Ex. 9]  On or about

16  August 1, 1987, Douglas Walsh, as executive director of NBAT, and NBA, as plan supervisor,

17  entered into an "Agreement for Plan Supervisor," whereby NBA was appointed plan supervisor

18  to, among other things, "market, sell, promote or offer the Plan to employers and/or

19  employees," approve claims, arrange for payment of claims from funds available to the plan,

20  establish the level or amount of contributions to the plan, as well as other administrative tasks

21  as set forth therein. [Liquidator's Trial Ex. 10, Section II] The Agreement for Plan Supervisor

22  expressly provided that NBA is entitled to a fee of 20% of all contributions:

23    The Plan Supervisor shall be entitled to a fee for its services to the
     Plan under this Agreement which shall be payable on a monthly
24    basis and computed at the rate of twenty percent (20%) of all
     contributions, exclusive of life insurance contributions, received
25    in a given month for all Plan participants who become such
     subsequent to August 1, 1987.

26  [*Id*., Section IV].  The Agreement for Plan Supervisor further provided that NBA shall incur

27  no liability for any act or failure to act not connected with the processing and payment of

28

- 10 -

1   claims.  The Agreement for Plan Supervisor was signed by Mr. Walsh as executive director

2   of NBAT and by the Debtor on behalf of NBA.  [*Id.*]  The 20% administrative fee was placed

3   in an NBA account for administration and the remaining 80% was placed in a separate NBAT

4   account to pay claims.

5          The Debtor argues that he was not a trustee with respect to the 20% administrative fee

6   and had no fiduciary duty with respect to the 20% fee, and accordingly, the Bonus and Loan

7   Payments he made to himself from this fee did not constitute defalcation under 11 U.S.C. §

8   523(A)(4).  The Debtor alleges that he owed a fiduciary duty only with respect to the 80%

9   claims portion of the trust.  As such, the Debtor maintains that he never received funds from

10  the *res* of the trust because the payments he received were never intended to pay the claims of

11  the plan participants.

12         The Liquidator argues that because the Bankruptcy Court adopted the Kentucky Court's

13  decision that NBAT and NBA were a single entity, both entities became an express trust.  The

14  Liquidator fails to explain, however, how this decision made all funds held in an NBA account

15  trust funds for purposes of § 523(a)(4).  If such an effect had automatically occurred, there

16  would have been no need for a trial on the issue of the dischargeability of the Bonus and Loan

17  Payments.  However, after the Bankruptcy Court granted the *motion in limine* on the "single

18  entity" issue, it conducted a three-day trial to determine whether payments were improperly

19  made out of an express trust.  Moreover, the Court rejected the Liquidator's argument that the

20  single entity issue was dispositive as to the question whether the Debtor was paid out of trust

21  monies and denied her renewed motion for summary judgment on this basis.  The Bankruptcy

22  Court noted that under *Penick*, the key element in determining whether a judgment is

23  nondischargeable pursuant to 11 U.S.C. § 523(a)(4) "is that the money was taken from a trust

24  fund. . . . And so it would depend on the source of the funds paid to NBAT or NBA that were

25  in turn paid to [the Debtor]."  The Court went on to state that "[o]f the funds that came in,

26  twenty percent were to go to NBA to pay, in effect, their overhead and operations.  And so I

27

28

1   would presume at this point, that that's not a trust fund, that portion of it." [Doc. # 144, March

2   3 Transcript, pp. 16-17]

3         The evidence in the record demonstrates that, as to the 20% Administrative Fee, an

4   express trust was not created: there was (1) no intent to create a trust; (2) no trustee; (3) no

5   trust *res*; and (4) no definite beneficiary.  *See In re Blaszak*, 397 F.3d 386, 391-92 ( 6th Cir.

6   2005).  In an arms-length negotiated agreement, NBA, as plan supervisor, was entitled to take

7   the 20% fee for administrative services. [Liquidator's Trial Ex. 10, Section IV] The plan

8   supervisor could use this money for any purpose, including payment of salaries, bonuses, or

9   compensation to its owners. [Doc. # 145, March 5 Transcript, pp. 18-19]  A review of the

10  evidence presented at trial demonstrates that the 20% Administrative Fee was kept in an

11  account separate from the 80% claims portion.  Accordingly, there is no evidence in the record

12  to support a finding that with respect to the 20% Administrative Fee, there was an intent to

13  create a trust, that the Debtor was a trustee, that the 20% fee was part of a trust *res,* or that

14  there was a beneficiary -- the evidence demonstrates that it was intended to be the Debtor's

15  money.  Moreover, the evidence presented at trial shows that the Debtor received the Bonus

16  Payment and the Loan Payments from the separate account holding the 20% Administrative

17  Fee.   In fact, the Liquidator's attorney admitted that the Debtor received no money from the

18  80% claims portion:

19        THE COURT: [A]re you going to put on evidence that he paid this money out
          of an express trust fund?
20
21        MR. JORDAN: The checks did not come out of NBAT's account.

22        Accordingly, based on the foregoing, the Liquidator failed to meet its burden of

23  establishing the existence of an express trust, and the Bankruptcy Court therefore erred in

24  denying the Debtor a discharge under § 523(a)(4) with respect to the Bonus Payment and the

25  Loan Payments.

26        In light of the Court's determination above, the Court need not reach the issue whether

27  the nondischargeability of the Bonus Payment was properly before the Bankruptcy Court.

28  / / /

1       B.      The Cross-Appeal

2           The Liquidator argues that the Bankruptcy Court erred in failing to hold the Debtor's

3   liability for all unpaid claims and losses of NBAT/NBA nondischargeable in bankruptcy.  As

4   discussed previously, in its September 17, 2003 order [Doc. # 129], the Bankruptcy Court

5   concluded that the Debtor's "apparent liability for all of the unpaid claims of NBAT . . . is

6   dischargeable in bankruptcy."  Citing *In re Hemmeter* and *In re Penick*, the Court stated that

7   "[t]he essence of defalcation for bankruptcy discharge purposes is the failure to produce funds

8   entrusted to a fiduciary.  This concept does not embrace the normal acts within the business

9   judgment of the fiduciary that, however flawed, do not involve the failure to account for or

10  produce a beneficiary's funds."  The Bankruptcy Court found that NBAT and NBA could

11  account for or produce the funds entrusted to it.  The Court agreed with the conclusion of the

12  U.S. Department of Labor that this was not a case where a subject actively misled the trustees.

13  The Court stated that the NBAT employee benefit program "was simply underfunded by the

14  employers from the outset and that is, at a minimum, one of the reasons for its ultimate and all

15  but certain financial collapse."

16          The parties filed motions for reconsideration.  In the Bankruptcy Court's March 24,

17  2004 order denying the Liquidator's Motion for Reconsideration [Doc. # 149], the Court stated

18  that it agreed that the Debtor violated his fiduciary duty of disclosure when he failed to inform

19  the beneficiaries and their employers of the severe financial distress of NBAT.  However, the

20  Bankruptcy Court concluded that it could "not determine from this record the amount of any

21  additional damages that should be declared not discharged . . . ."

22          The Bankruptcy Court noted that "this case was not tried based upon the theory of

23  failure to disclose and the damages caused by such failure.  Thus there was no damage

24  presentation or exhibit which shows the losses that were incurred after a duty to disclose."  The

25  Bankruptcy Court further noted that it was not clear when the duty to disclose arose.  The

26  Court stated that the total losses "appear excessive" and pointed out one claim for over one

27  million dollars that appeared to be invalid.  Thus, the Bankruptcy Court found that it lacked

28

an evidentiary basis to begin calculating damages.  The Court also stated that it had a strong sense that not all of the damages suffered should be assessed to the Debtor and noted that the employers who turned over their employee benefit plans were "in part responsible for some portion of damages because they apparently failed to ensure that NBAT was able to pay the claims of their employees."  Thereafter, the Bankruptcy Court concluded that the Debtor's apparent liability for all of the unpaid claims of NBAT to be dischargeable in bankruptcy.

Assuming without deciding that the Debtor violated his fiduciary duty of disclosure when he failed to inform the beneficiaries and their employers of the severe financial distress of NBAT and thus created potential nondischargeable liability under section 523(a)(4) with respect to subsequent unpaid benefit claims, this Court, sitting as an appellate court, is not in a position to make a determination of the amount of damages to be assessed based on the record before it.  The Court agrees with the reasoning of the Bankruptcy Court that because this case was not tried based upon the theory of failure to disclose and the damages caused by such failure, there is insufficient evidence in the record to ascertain precise damages. Accordingly, the Court will affirm the Bankruptcy Court's judgment with respect to this issue.

IV.    CONCLUSION

Based on the foregoing,

**IT IS ORDERED** reversing that part of the Bankruptcy Court's July 9, 2004 Order finding the $362,282.70 Bonus Payment and the Loan Payments of $395,000.00, as well as the applicable pre- and post-judgment interest thereon, not dischargeable under 11 U.S.C. § 523(a)(4).  [Doc. # 158]

**IT IS FURTHER ORDERED** affirming that part of the Bankruptcy Court's July 9, 2004 Order finding that the Debtor's apparent liability for all of the unpaid claims of NBAT

/ / /

/ / /

/ / /

/ / /

- 14 -

1   was dischargeable in bankruptcy.  [Doc. # 158]

2        In light of the Court's ruling above,

3        **IT IS FURTHER ORDERED** denying Appellant's Motion to Strike as moot. [Doc.

4   # 18]

5        DATED this 25th day of May, 2007.

6

7

8   _____
                    Roger G. Strand
              Senior United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28